*In re* ESTATE OF JOSEPH ABBOT, Deceased (Michael Simanello *et al.*, Petitioners-Appellees, v. Millie Armstrong, Respondent-Appellant).

Third District   No. 3—86—0380

Opinion filed July 14, 1987.

Kenneth L. Strong, of Thompson, Strong, Blakeman & Schrock, Ltd., of Pontiac, for appellant.

Peter F. Ferracuti and Brad S. Denney, both of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellees Michael Simanello, Joe Simanello, Josephine Lieske, and Sara Mars.

Michael Gulo, of Streator, for appellee Estate of Joseph Abbot.

JUSTICE WOMBACHER delivered the opinion of the court:

Petitioners, John Simanello, Michael Simanello, Sara Mars and Josephine Lieske, filed this citation petition to discover assets against the respondent, Millie Armstrong, executrix of the estate of Joseph Abbot, deceased. The petitioners sought to have the assets of two joint bank accounts added to the estate's inventory. The two joint accounts were in the names of the decedent and the respondent. The trial court held that the petitioners overcame the presumption of gift to the respondent and that the two joint accounts were assets of the estate. Respondent appeals.

Joseph Abbot died on August 14, 1984. He was survived by five natural children, namely, Sara Mars, Millie Armstrong, Josephine Lieske, Girardo Abbot, and Angelo Abbot. He was also survived by stepsons, Joe (John) Simanello, Michael Simanello and James Simanello.

The two bank accounts in question were originally opened by the decedent in joint tenancy with his wife, Maria Luise Abbot. One account was a joint savings account with the Streator National Bank and the second account was a credit union joint account held at the Streator Ionized Federal Credit Union. Maria Luise Abbot died on January 14, 1984. Following the funeral on January 22 or 23, 1984, there was a family gathering at the Joseph Abbot home. The decedent's health was deteriorating and he was to enter the hospital the next day with grade III carcinoma of the bladder. The testimony as to the conversation that took place at this meeting was conflicting.

Petitioner Michael Simanello testified that at the family meeting on January 22 or 23, the decedent instructed him to take the respondent to the bank and to place the respondent's name on the decedent's bank account so that if anything happened to the decedent the respondent would be able to take care of the bills. Michael Simanello

also testified that the decedent stated that any money left over after the payment of bills would be split eight ways and that Millie indicated that she understood and agreed. At trial, the other petitioners corroborated Michael Simanello's version of the conversation that took place at the family gathering and that it was decedent's intention that any remaining money be "shared and shared alike" by the children.

The respondent, Millie Armstrong, testified that on one occasion three weeks before the decedent went to the hospital, with only she and the decedent present, the decedent told her to give each one of the children $5,000. Although the respondent admitted that she was at the family gathering on January 23 or 24, she denied that the decedent stated that her name was being placed on the joint accounts to pay the bills. She also denied that the decedent stated that he wanted all the children to receive equal shares.

The day after the family meeting with the decedent, Michael Simanello took the respondent to the Streator National Bank and to the Ionized Credit Union and placed the respondent's name on the accounts as a joint tenant with the decedent. Michael Simanello then took the documents to the decedent at his home, where he signed them. The next day the decedent entered St. Mary's Hospital in Streator and remained there until February 8, 1984. From February 8 until June 21 Joseph Abbot remained at his home in Streator, where he cared for himself with the assistance of various family members.

Joseph Abbot reentered the hospital on June 21 and remained there as a patient until he died on August 14. He left a will dated February 23, 1981. In his will the decedent left all his property to his wife, Maria Luise, if she survived, and if not, to his children in equal shares. A codicil executed on February 24, 1984, deleted his wife as executrix and substituted his daughter, Millie Armstrong, but did not make any changes as to the bequest.

At the time of decedent's death, there was a balance of $77,209.99 in the account at the Streator National Bank and a $12,249.49 balance in the account at the Streator Ionized Federal Credit Union. Prior to the decedent's death, respondent made no deposits or withdrawals from these accounts.

On August 24, 1984, Michael Simanello accompanied the respondent to the Streator National Bank. Respondent withdrew $20,000, stating that she needed the money to pay the bills. Respondent then used $6,733.42 of the $20,000 to pay some of the decedent's bills. On April 1, 1985, the respondent paid $5,000 to each of the seven brothers and sisters and enclosed a note with each payment stating that

she was carrying out her father's wishes.

■■ ■ Initially, the respondent argues that the trial court erred in allowing the petitioners to testify concerning statements allegedly made by the decedent with regard to the joint accounts. Respondent claims that this testimony was barred by the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201). The Dead Man's Act prohibits an adverse party or an interested party from testifying on his own behalf concerning a conversation with the deceased where the representative of a decedent is suing or defending a suit. We agree that the trial court erred in allowing the testimony of the petitioners concerning conversations they had with the the the decedent regarding the joint accounts. The petitioners were clearly interested parties because they had a direct pecuniary interest in the outcome of the litigation. (See *Michalski v. Chicago Title & Trust Co.* (1977), 50 Ill. App. 3d 335, 365 N.E.2d 654.) We find, however, that any error was harmless because there was substantial other evidence adduced at trial to support the trial court's findings.

■■ Respondent, Millie Armstrong, next argues that the trial court erred in ruling that the presumption of a gift of the joint bank accounts to her was overcome by clear and convincing evidence. Respondent claims that the testimony of the petitioners at trial was conflicting and that there was insufficient evidence to overcome the presumption of a gift to Millie Armstrong. Petitioners claim that the presumption of a gift to Millie Armstrong was rebutted by evidence concerning the facts surrounding the creation of the joint accounts and the circumstances and events which occurred after the creation of the joint accounts.

The transfer of personal property in joint tenancy by a father with the right of survivorship in a child creates a presumption of a valid gift to the child as the surviving joint tenant. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) The burden is on the party challenging the gift to overcome the presumption and that party must present clear and convincing evidence of the lack of donative intent. (*In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 382 N.E.2d 585.) In determining whether a gift was intended, it is proper to take into consideration the facts surrounding the creation of the account and all the circumstances and events occurring after the creation of the joint account. *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 445.

■ In *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 555, 388 N.E.2d 431, 433-34, the court discussed several factors to be considered in determining whether a donor actually intended to transfer his

interest in the account at his death to the surviving joint tenant: (1) whether the surviving joint tenant exercised authority and control over the joint account during the decedent's lifetime; (2) whether the surviving joint tenant considered himself as having any ownership in the account; (3) whether the transfer was made for the mere convenience of the creator of the account; and (4) the quantity of personal property involved in comparison to the total assets of the estate.

■ After a careful review of the record, we find that the trial court correctly held that the petitioners overcame the presumption of donative intent on the part of the decedent. The respondent testified that she never made any withdrawals from either of the accounts during the decedent's lifetime nor did she exercise authority or control over the accounts. In fact, she only obtained possession of the bankbook for the Streator National Bank account shortly before the decedent died. Therefore, the trial court properly determined that the respondent did not exercise authority and control over the accounts during the decedent's lifetime.

The respondent's testimony was conflicting on the issue of whether she considered herself as having an ownership interest in the accounts. The respondent testified in her discovery deposition that she did not think that the decedent was making a gift to her of the remaining balance of the joint accounts. At trial, the respondent then contradicted this testimony. Respondent admitted that the decedent never told her that he was going to give her the money in either of the two joint accounts. She also stated that she did not have any knowledge of what was contained in those accounts while the decedent was alive. The trial judge, as the trier of fact in this case, was in the best position to judge the credibility of the witnesses and the weight to be given their testimony. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958.) Clearly, the trial judge could have reasonably concluded that the respondent did not consider herself to have an ownership interest in the accounts.

The fact that the decedent, who was suffering grade III carcinoma of the bladder, created the joint accounts the day before he was to enter the hospital supports the trial court's finding that the accounts were made for convenience and not with the intent to make a gift. In addition, the fact that the decedent only substituted Millie Armstrong as a joint tenant on the accounts after his wife died also supports this finding.

Finally, there would be a gross disparity in the amount the respondent would receive and the amount the other children would receive. If a gift was intended, the respondent would be entitled to over

$90,000, while the other seven children would divide the remainder of an estate of minimal value. A gross disparity would still exist even if the $5,000 payments by the respondent to the other children are taken into consideration. We conclude that the trial court properly determined that the presumption of donative intent on the part of the decedent was rebutted by clear and convincing evidence.

For the foregoing reasons, the judgement of the circuit court of La Salle County is affirmed.

Affirmed.

SCOTT, P.J., and BARRY, J., concur.