CAROLINE MICHALSKI et al., Plaintiffs-Appellees, v. CHICAGO TITLE AND TRUST COMPANY, Trustee, Defendants.—(PASQUALE LOSURDO, Defendant-Appellant.)

First District (3rd Division)    No. 76-898

Opinion filed June 22, 1977.

Max Earl Sherman, of Chicago, for appellant.

Henry W. Kenoe and Donald S. Lavin, both of Kenoe and Fine, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs brought this action in the chancery division of the circuit court of Cook County to establish ownership and title in certain real estate in themselves. Plaintiffs maintained that deeds in their favor had been executed and delivered by the grantors and had been accepted by the grantee, but that the deeds were unrecorded and lost, mislaid or destroyed. The plaintiffs, as will be developed, are related to the defendants. After hearing evidence, the trial court, sitting without a jury, entered judgment in favor of the plaintiffs and found the defendants to have no interest or title in the real estate. Only one defendant, Pasquale Losurdo, appeals. He contends that under provisions of the Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51 par. 2), the trial court erred in permitting certain witnesses to testify, and that the evidence adduced was insufficient to justify the restoration of the deeds.

The plaintiffs, Caroline Michalski, Leo Losurdo and Carlo Losurdo, are children of Amatore and Anna Losurdo. The other two plaintiffs, Rose Marie and Anna Maria Mariani, are grandchildren of Amatore and Anna. Two defendants, Pasquale Losurdo and Margaret Mariani, are also

children of Amatore and Anna. The plaintiff Marianis are the daughters of the defendant Margaret.

Amatore and Anna were the joint owners of three unencumbered parcels of real estate located in Cook County. Amatore died in September 1972 and Anna died in April 1974. On November 5, 1975, the plaintiffs filed suit against Pasquale, Margaret and the Chicago Title and Trust Co., as trustee under three separate land trust agreements. The complaint alleged that the parents met with their attorney, Kenneth R. Piggott, and executed three trust agreements and three deeds in trust. The parents were to be the joint owners of the beneficial interest of each trust, and upon the death of the survivor, the beneficial interest of the trusts was to vest in plaintiffs in varying shares. The documents named CT&T as trustee, and allegedly were delivered to the company. The complaint further alleged that annual statements for their services as trustee were sent by CT&T and payments were duly made. The complaint also set forth that after the death of the mother in 1974, it was discovered that the deeds had been lost, mislaid or destroyed. The defendant Pasquale filed an answer to the complaint, denying that the real estate was properly conveyed to the trustee, and asserting claim to a portion of the real estate as an heir of Anna, who was the owner of the record title.

At trial plaintiffs offered several witnesses. Pasquale chose not to present any witnesses. Russell R. Custer, Jr., an employee of CT&T, was the first witness for plaintiffs. He had been so employed only since 1975, some four years after the execution of the trusts, but had brought CT&T's files on the three land trusts. The files contained the original trust agreements which had been accepted and signed. They were received by the company in August 1971. No deeds in trust were contained in any of the files. On March 14, 1974, the company was notified of the father's death, as evidenced by the death certificates, copies of inheritance tax payments, and copies of correspondence to and from Piggott contained in the files. A search of the company's records failed to uncover the missing deeds. Nothing contained in company records indicated that the deeds had been received by CT&T. Fees had been paid to the company as trustee for holding title to the trust property from 1972 up to the time of trial. The bills were sent to the father until 1974, at which time they were sent to the mother. Custer stated that fees being paid after the trusts had been set up would not indicate whether or not deeds were received by CT&T since bills would be issued in any event.

Guiliana Vici, former secretary to Piggott, testified that on July 29, 1971, she was asked by Piggott to stay late and type the documents. The parents, Caroline, Leo, Piggott and herself were present. At approximately 6 or 7 p.m. she filled in three deed in trust forms, using the trust agreements from which she obtained the legal description of the

properties. Although to her knowledge she had never before or since typed a deed in trust form, she did provide certain details concerning the contents of the forms. She identified a CT&T form as a kind with which she had worked at the time. She mistakenly testified that the jurat was at the top of the form. The witness did not remember typing any other documents on that date or typing on any other evening session. She worked for Piggott only for eight months.

Over Pasquale's objection that he was an incompetent witness under the Dead Man's Act, Kenneth Piggott testified that he was an attorney who had been retained by the Losurdos to devise their real estate to certain of their children. They contemplated devising part of the real estate to three children; one parcel to two granddaughters, children of an ill daughter, Margaret Mariani; and to disinherit Pasquale.

In February 1971, Piggott requested CT&T to set up three trust agreements. During that month, CT&T sent the trust agreements to Piggott. Some legal description errors were discovered, and surveys were ordered. After the surveys were received in June 1971, they were taken to CT&T. Amended trust agreements were mailed to Piggott on July 20, 1971. The aforementioned meeting of July 29, 1971, then took place. After Piggott's secretary typed the deeds and departed, he read the agreements and deeds to the Losurdos and they approved the contents. Amatore and Anna signed the three trust agreements and the deeds in trust. Piggott acknowledged the signature as a notary public, and affixed his seal to the deeds. He mailed the trust agreement to CT&T on the same evening and he delivered the deeds to CT&T on September 10, 1971.

In March or April 1975 after Anna's death, Piggott first learned that record title was in Amatore and Anna. No deeds had been recorded and none were in the files of CT&T. Piggott searched his office files on the outside possibility that he had not delivered the deeds to CT&T. Piggott was uncertain as to why he had not delivered the deeds to CT&T until September 10, 1971. He was on vacation from August 3 to August 10. After Amatore's death in 1972, Piggott had prepared the inheritance tax return. The return showed the property to be held jointly rather than in trust. Piggott testified that he had notified his insurance company of the matter because of the possibility of a claim against him for the handling of the deeds. None of the plaintiffs had filed a suit against him for negligence or malpractice, nor had they asserted or threatened a claim.

Over defense objections that she was incompetent under the Dead Man's Act, Caroline Michalski was permitted to testify subject to the possibility of the trial judge's reversal of that ruling after he had heard the witness. Caroline testified that in March or April 1975 when she was notified her parents were still the record title owners, she went through all

her mother's effects to locate the lost deeds. She was unable to locate anything. Her parents understood English well but their writing ability was limited. The trial court permitted Caroline's testimony to stand.

Pasquale's initial contention is that the trial court erred in permitting the attorney for the deceased parents to testify as to the existence of the deeds. The Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, par. 2) provides in pertinent part:

> "In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party *or person directly interested in the action* shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased * * *." (Emphasis supplied.)

Pasquale maintains that the possibility of a malpractice suit against Piggott rendered him a person interested in the action and should have disqualified him as a competent witness in the proceedings.

■■ In order to disqualify a witness as one "directly interested in the action," the interest in the judgment must be such that a pecuniary gain or loss will come to the witness directly as the immediate result of the judgment. (*Brownlie v. Brownlie* (1932), 351 Ill. 72, 183 N.E. 613; *In re Estate of Fordyce* (1971), 130 Ill. App. 2d 755, 265 N.E.2d 886.) The interest of the witness must be direct, certain and pecuniary. *Paschall v. Reed* (1943), 320 Ill. App. 390, 51 N.E.2d 342; *In re Estate of Truman* (1975), 32 Ill. App. 3d 886, 336 N.E.2d 766.

■■ In our view, Piggott's interest in the proceedings, rather than being direct, is so remote that the trial court properly allowed him to testify. There were no claims pending against him arising out of his conduct in the matter and it is undisputed that the plaintiffs had not even suggested filing such a claim. The fact that Piggott notified his insurance company as to the possibility of a future claim is insufficient to render him as an incompetent witness directly interested in the action. No matter what the result of these proceedings would be, there would be no certain, direct, or pecuniary effect on Piggott. If an interest in an action is of a doubtful or uncertain nature, that fact may go to the credibility of the witness, but not to his competency. See *Stephens v. Hoffman* (1914), 263 Ill. 197, 104 N.E. 1090.

Defendant Pasquale also argues that the trial court erred, under the provisions of the Dead Man's Act, in permitting an adverse party, Caroline Michalski, to testify in the proceedings.

■■ The act permits a party to the action to testify regarding events which occurred subsequent to the death of the decedent. Ill. Rev. Stat. 1973, ch. 51, par. 2(1).

It appears that Caroline's testimony was confined to facts which occurred subsequent to the death of the grantor, and therefore was proper and admissible. Even if it were assumed that her testimony included facts occurring prior to the grantor's death, the admission of her testimony could be considered only as harmless error.

Defendant next contends that, even if all the testimony is considered, the evidence was insufficient to justify restoration of the deeds.

■■ Parties seeking to establish the existence and contents of unrecorded deeds by parol evidence must do so by clear and conclusive evidence. (*Shipley v. Shipley* (1916), 274 Ill. 506, 113 N.E. 906; *Chicago Housing Authority v. Cooper* (1958), 19 Ill. App. 2d 441, 154 N.E.2d 308.) In the present case, Piggott's ex-secretary testified that she typed three deeds in trust and that she took the names of the grantors and the legal description from the three trust agreements which had been given to her. She then gave the completed deeds to Piggott. Piggott testified that after he received the three completed deeds he explained their contents to the grantors. They expressed their understanding and executed the deeds. Piggott acknowledged the signatures and thereafter personally delivered the deeds to CT&T. While the testimony of the two witnesses contained minor inaccuracies and failures in recollection, it was credible and not unreasonable. Moreover, their testimony received strong corroboration from the undisputed existence of the three trust agreements in the CT&T files and by the acknowledged billing of the grantors by CT&T for holding title as trustee to the real estate in question. The evidence in support of the restoration of the deeds was clear and conclusive, and we agree with the observation of the trial judge that the evidence was "over whelming" in favor of the plaintiffs.

■■ Defendant also contends that in order for a deed to operate to pass title it must be made and executed by the grantor and actually delivered to and accepted by the grantee. While plaintiffs maintain that their attorney actually delivered the deeds to the grantee CT&T, it was sufficient to demonstrate an effective and valid delivery of the deeds when the grantors gave the deeds to their attorney with instructions to complete the transfer of title. (See *Calcutt v. Gaylord* (1953), 415 Ill. 390, 114 N.E.2d 340; *Thurston v. Tubbs* (1913), 257 Ill. 465, 100 N.E. 947.) Where a grantor manifests an intention that the deeds shall immediately become operative and indicates an intention to cede all control, a good delivery is manifested. (See *Dunn v. Heasley* (1940), 375 Ill. 43, 30 N.E.2d 628.) In the instant case, the grantors not only executed the deeds and turned them over to their attorney, but subsequently paid CT&T for holding title. They clearly demonstrated an intention to and did in fact deliver the deeds.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON P. J., and McGILLICUDDY, J., concur.