NO. 4-00-0729

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

SUBWAY RESTAURANTS OF 

BLOOMINGTON-NORMAL, INC., an Illinois Corporation,

Plaintiff-Appellee,

v.

JUDITH BAAR TOPINKA, as State Treasurer of the State of Illinois; THE ILLINOIS DEPARTMENT OF REVENUE; and KENNETH H. ZEHNDER, Director of the Illinois Department of Revenue,

Defendants-Appellants.

)

)

)

)

)

)

)

)

)))

Appeal from

Circuit Court of

McLean County

No. 97TX3

Honorable

John P. Freese,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In June 1997, plaintiff, Subway Restaurants of Bloomington-Normal, Inc. (Subway), filed a complaint against defendants, Judith Baar Topinka, the State Treasurer, Kenneth H. Zehnder, the Director of the Illinois Department of Revenue, and the Illinois Department of Revenue (collectively Department), seeking the return of $64,851 under the Retailers' Occupation Tax (ROT) Act (35 ILCS 120/1 through 14 (West 1996)) and interest thereon, which Subway had previously paid under protest.  The parties later filed cross-motions for summary judgment, and in July 2000, the trial court granted Subway's motion for summary judgment.  The Department appeals, and we reverse and remand with directions.

I. BACKGROUND

The following facts appear in the parties' jointly filed stipulation of facts.  In July 1995, Subway agreed to lease space from Illinois State University (University), an exclusively educational institution, in four of its on-campus student residence halls and operate a Subway restaurant in each of those locations.  (Shortly after entering into the leases with the University, Subway entered into contracts with Douglas and Cynthia Barch to operate and manage the four restaurants.  The Barches are not parties to this appeal.)  

Through the lease agreements, the University sought to provide its students, faculty, and staff members with a dining option in addition to the University-run cafeterias.  The four leases, which were identical, provided that the relationship between the University and Subway was that of lessor and lessee.  The University did not assist Subway in operating or managing the four on-campus restaurants, and Subway did not produce any food products for distribution by the University.  The prices charged at the on-campus restaurants were consistent with the prices charged at seven other Subway restaurants located near the University.  However, pursuant to the leases, the University reserved the right to review Subway's prices and menu format.  

Subway purchased its products and supplies for all of its local restaurants from the same supplier, and Subway did not purchase any supplies in conjunction with, or in the name of, the University.  Subway used its own equipment and personal property to make its food products, and Subway was responsible for maintaining its equipment and furniture.  

Subway hired its own employees to work at the on-campus restaurants and provided them with uniforms and training in the same way it did at its other restaurants.  However, under the leases, Subway was required to give hiring preference to the University's students. 

As lessor of the property, the University was obligated to provide Subway with utilities and garbage removal.  Pursuant to the leases, Subway operated the on-campus restaurants only when the University's students were present in the residence halls--that is, during the academic term and during move-in days immediately preceding the start of classes.  During such times, the on-campus restaurants were open to members of the general public as well as the University's students, faculty, and staff members. 

Subway was responsible for paying all taxes on its sales and operations.  As lessee, Subway also was responsible for maintaining insurance on all its furniture, fixtures, equipment, and inventory.  It also had to pay for and carry general public liability insurance.       

The leases also contained the following provisions:  (1) Subway was prohibited from acting as an agent of the University; (2) Subway functioned as a lessee and independent contractor for the University; (3) "no employee of [Subway could] be deemed an employee of [the University] for any purpose"; (4) Subway was required to conform to all rules and regulations of the University; (5) Subway would allow the University to inspect the premises at any time; and (6) Subway was required to submit all disputes and questions to the University's residence hall food service director for resolution.

In August 1995, Subway opened a restaurant in each of the four residence halls.  Any patron of the on-campus Subway restaurants could pay cash for his or her food and beverages.  (Between August 1, 1995, and March 31, 1996, Subway collected and remitted $258,223 in ROT based on cash sales at the on-campus restaurants.  That ROT is not at issue in this case.)  

Each student who entered into a room and board contract with the University was issued a computerized declining balance debit card (debit card) with an initial balance ranging from $759 to $1,030 per semester (depending upon which residence hall the student lived in).  Those students could use their debit cards to purchase food and beverages, which the University was obligated to provide them under the room and board contracts.  They could use their debit cards at the on-campus Subway restaurants, the University-run cafeterias, or a combination of both.  Each time a student purchased food and beverages with his debit card, the total purchase amount was automatically deducted from the debit card's account balance.  

In addition, students, faculty, and staff members who did not reside in the residence halls could establish debit card accounts by depositing funds with the University.  The deposited amount would then appear as a balance on the individual's debit card.  These debit-card holders, like students with room and board contracts, could purchase food and beverages from either the on-campus Subway restaurants or the University-run cafeterias by using their debit cards. 

Pursuant to the leases, Subway reported the monthly gross transactions from the on-campus restaurants to the University.  After totaling all debit-card sales, the University kept a 2 1/2% transaction fee and remitted the balance to Subway.

Sometime during 1997, the Department conducted an audit of Subway's sales tax records for the period January 1994 through October 1996.  The Department later issued a notice of tax liability based upon Subway's failure to pay ROT for the period August 1995 through March 1996 for food purchased with University-issued debit cards.  According to the Department, Subway owed $58,088 in ROT, plus $6,763 in interest, totaling $64,851.  In May 1997, Subway paid that amount to the State Treasurer under protest.  30 ILCS 230/2a (West 1996).  

In June 1997, Subway filed a complaint against the Department, seeking the return of $64,851 in ROT and interest.  In the complaint, Subway alleged that it did not owe ROT for student purchases with a debit card because Subway served as the University's agent.  The trial court later enjoined the State Treasurer from transferring the money into the treasury's general fund.  In October 1998, the parties jointly filed a stipulation of facts.  

In November 1998, Subway filed a motion for summary judgment, and in March 1999, the Department filed a motion for summary judgment.  In November 1999, the trial court conducted a hearing on the cross-motions for summary judgment and took the matter under advisement.  In July 2000, the court granted Subway's motion and denied the Department's motion, finding that "[t]he obligation to pay for the food is [the University's] and [Subway] is exempt from [ROT]."  This appeal followed.  

II. ANALYSIS

A. Standard of Review

A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See 735 ILCS 5/2-1005(c) (West 1998); 
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997).  When parties file cross-motions for summary judgment, they agree that (1) no material issue of fact exists; and (2) only a question of law is involved.  In such a case, we review 
de
 
novo
 the trial court's decision.  
Andrews v. Cramer
, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133, 135 (1993).

B. Retailers' Occupation Tax

In Illinois, any person or company, including an exclusively educational institution, that regularly sells products for consumption is required to pay ROT.  See 35 ILCS 120/2 (West 1996) (ROT is "imposed upon persons engaged in the business of selling at retail tangible personal property"); 35 ILCS 120/1 (West 1996) ("'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption ***"); see also 86 Ill. Adm. Code §130.310 (West CD-ROM April 1997) (the sale of food for consumption is subject to ROT).  Although the amount of the tax is based on the value of products sold, the tax is on the seller and the seller's business, not on the product or the consumer.  See 
Soho Club, Inc. v. Department of Revenue
, 269 Ill. App. 3d 220, 228-29, 645 N.E.2d 1060, 1066 (1995). 

Sections 130.2005(a)(2) through (a)(4) of the Illinois Administrative Code (Code) (86 Ill. Adm. Code §§130.2005(a)(2) through (a)(4) (West CD-ROM April 1997)) provide that an exclusively educational institution, or its agent, is exempt from ROT under the following circumstances: (1) when the sale of products for consumption is primarily for the purposes of the educational institution; (2) where the sales do not compete with area businesses; and (3) where the sale constitutes an occasional dinner or social event.  See also 86 Ill. Adm. Code §130.2005(a)(1)(A) (West CD-ROM April 1997) (there are "very limited exemptions from [ROT] for sales by exclusively charitable, religious[,] and educational organizations and institutions"); 86 Ill. Adm. Code §130.1915(a)(2) (West CD-ROM April 1997) (sales made by an agent acting for a disclosed principal are taxable to the principal).  In the context of a university-run dining facility, an educational institution can maintain its exempt status only if it confines the sale of food to its students, faculty, and staff members.  See 86 Ill. Adm. Code §130.2005(b)(4)(A) (West CD-ROM April 1997) ("In any instance in which the dining facility is opened up for the use of other persons, all sales that are made at such facility while that condition continues to prevail are taxable").  

In addition, a company that sells food products to an exclusively educational institution is exempt from ROT.  See 35 ILCS 120/2-5(11) (West 1996) (personal property sold to an institution "operated exclusively for *** educational purposes" is exempt from ROT); 86 Ill. Adm. Code §130.120(h) (West CD-ROM April 1997). 

C. Subway's Exempt Status

The Department first argues that the trial court erred by granting Subway's motion for summary judgment because Subway was not exempt from ROT.  Specifically, the Department contends that (1) Subway was not an agent for the University; (2) Subway did not make "sales at retail" to the University; and (3) even if Subway's on-campus restaurants were likened to the University-run cafeterias, Subway was not exempt from ROT because, unlike the University-run cafeterias, the on-campus restaurants were open to the public.  We agree with all of the Department's contentions.

1. 
Review
 
of
 
Exemption
 
Provisions

The Department's regulations have the force and effect of law and courts construe them under the same standards governing a statute's construction.  
Tivoli Enterprises, Inc. v. Zehnder
, 297 Ill. App. 3d 125, 132, 696 N.E.2d 1202, 1206 (1998).  When construing exemption provisions, we must be mindful that (1) "taxation is the rule.  Tax exemption is the exception" (
Chicago Bar Ass'n v. Department of Revenue
, 163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1171-72 (1994)), and (2) all debatable questions must be resolved in favor of taxation (
Illini Media Co. v. Department of Revenue
, 279 Ill. App. 3d 432, 435, 664 N.E.2d 706, 709 (1996)).  

2. 
Whether
 
Subway
 
Is
 
An
 
Agent
 
of
 
the
 
University

The Department first contends that Subway was not exempt from ROT because it was not acting as the University's agent in operating the on-campus restaurants.  We agree.

As earlier stated, an educational institution's agent is exempt from ROT under three circumstances--that is, (1) when the sale of products for consumption is primarily for the purposes of the school; (2) where the sales do not compete with area businesses; and (3) where the sale constitutes an occasional dinner or social event.  86 Ill. Adm. Code §§130.1915(a)(2), 130.2005(a)(2) through (a)(4) (West CD-ROM April 1997).   

In this case, the lease agreements provided that Subway functioned as a lessee and independent contractor for the University.  Although the University retained rights to review Subway's operation of the on-campus restaurants, nothing in the record indicates that Subway acted as the University's agent when it sold food and beverages to debit-card holders at the on-campus restaurants.  Indeed, in its brief before this court, Subway concedes that it was not the University's agent.  We therefore conclude that Subway was not exempt from ROT based on its agency status.   

3. 
Whether
 
Subway
 
Makes
 "
Sales
 
at
 
Retail
" 
to
 
the
 
University

The Department next contends that Subway was not exempt from ROT because it did not make "sales at retail" to the University but, instead, made such sales to the University's students, faculty, and staff members.  In response, Subway contends that it was exempt from ROT because it acted as a wholesale supplier when it sold food and beverage products to the University, which in turn resold the products to students, faculty, and staff members.  We agree with the Department.

As earlier stated, ROT is "imposed upon persons engaged in the business of selling 
at
 
retail
 tangible personal property."  (Emphasis added.)  35 ILCS 120/2 (West 1996).  "'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale ***."  35 ILCS 120/1 (West 1996).   

We agree with the Department that the "sale at retail" in this case occurred when a student, faculty, or staff member paid by debit card for a food or beverage product at one of Subway's on-campus restaurants for the purpose of consuming that product.  The University never made a purchase at retail from Subway. 

In addition, we reject Subway's contention that it "was acting as a wholesale supplier of food to the University[,] which was acting as a retail seller to its students and staff."  Nothing in the record indicates that Subway "transfer[red] *** the ownership" of its food and beverage products to the University, which then retailed the products to debit-card holding students, faculty, and staff members.  Instead, the record shows that (1) the University did not take part in Subway's day-to-day operations or management; (2) all of the on-campus restaurant workers were Subway employees, not University employees; and (3) Subway did not produce any food products for distribution by the University.  The fact that the University retained the right to review Subway's prices and menu did not transform the University into the retailer of Subway's food products. 

Nor does the fact that on a monthly basis, the University remitted cash to Subway for its debit-card sales (minus a 2 1/2% transaction fee) make the University the purchaser of Subway's products (either as a consumer or a retailer).  The University's only role was to facilitate the transactions between its students, faculty, and staff members and Subway through the debit-card system.  At the point of each sale, the computerized debit-card system subtracted the exact cost of the food and beverage products from the debit-card holder's account reserves and credited Subway with the cost, minus the transaction fee.  Under this system, the debit-card holder was always responsible for paying for the product.  If the debit-card holder did not have sufficient funds available in his debit-card account, he had to pay for the food or beverage product with cash or Subway would not transfer ownership of the product.  We agree with the Department that the debit-card arrangement between Subway and the University was similar to that of a retailer and credit card company.  That a restaurant receives cash for a sale at retail from an entity other than the point-of-purchase consumer does not mean that the restaurant has made a sale at retail to anyone other than that consumer.  

The record establishes that (1) Subway made sales at retail to the debit-card holders, not to the University; and (2) Subway did not act as a wholesale supplier to the University.  Neither the applicable statutory provisions nor the Department's regulations grant for-profit public businesses, such as Subway, tax exemptions for sales to university students, faculty, or staff members, regardless of the manner in which they pay for their purchases.  We therefore conclude that Subway was not exempt from ROT for its sales at retail to holders of the University-issued debit cards. 

4. 
University-Run
 
Facilities
 
Which
 
Are
 
Open
 
to
 
the
 
Public
  

The Department also contends that even if Subway's on-campus restaurants were likened to the University-run cafeterias, Subway was not exempt from ROT because the on-campus restaurants were open to the public.  We agree. 

Section 130.2005(b)(4)(A) of the Code provides as follows:

"A school does not incur [ROT] liability on its operation of a cafeteria or other dining facility which is conducted on the school's premises, and which confines its selling to the students and employees of the school.  
In
 
any
 
instance
 
in
 
which
 
the
 
dining
 
facility
 
is
 
opened
 
up
 
for
 
the
 
use
 
of
 
other
 
persons
, 
all
 
sales
 
that
 
are
 
made
 
at
 
such
 
facility
 
while
 
that
 
condition
 
continues
 
to
 
prevail
 
are
 
taxable
."  (Emphasis added.)  86 Ill. Adm. Code §130.2005(b)(4)(A) (West CD-ROM April 1997). 

Thus, even if this court were to assume that Subway's sales of food and beverage products to debit-card holders served the same function as the University-run cafeterias, we would conclude that Subway was not exempt from ROT because its on-campus restaurants were open to the public.

Contrary to Subway's contention, the Department's Private Letter Ruling No. 95-0195, issued May 12, 1995, does not require a different result.  In that ruling, the Department determined that Southern Illinois University at Edwardsville (Southern) was entitled to an ROT exemption for food sales to "students who reside in on-campus university housing who have purchased a meal plan," even though such sales were made at the student union, which was open to students, faculty, staff members, and the general public.  Department of Revenue, Private Letter Ruling No. 95-0195, May 12, 1995.  The ruling did not extend to other students, faculty, or staff members who had established debit-card accounts with the university.  Southern had requested an exemption after (1) opening its first residence hall and (2) deciding to provide meals to residence-hall students at the existing student union to avoid the cost of building a "multi[]million dollar kitchen and dining facility."  Department of Revenue, Private Letter Ruling No. 95-0195, May 12, 1995.  

Generally, "private letter rulings have no precedential effect."  
Union Electric Co. v. Department of Revenue
, 136 Ill. 2d 385, 400, 556 N.E.2d 236, 243 (1990).  However, where a private letter ruling "clearly contains a policy of general applicability" that "reflects the policy which was in effect during the time period at issue," it may be considered "instructive" as to the Department's construction of its regulations.  
Union Electric Co.
, 136 Ill. 2d at 400-01, 556 N.E.2d at 243.  

The Department's May 12, 1995, private letter ruling did not clearly contain a policy of general applicability that was in effect during the time period at issue.  As evidence of this fact, we note that the parties have appended to their briefs four private letter rulings issued between 1983 and 1994, in which the Department adhered to section 130.2005(b)(4)(A) of the Code (86 Ill. Adm. Code §130.2005(b)(4)(A) (West CD-ROM April 1997)).  See Department of Revenue, Private Letter Ruling Nos. 83-0986, November 22, 1983; 83-0335, April 5, 1983; 83-0360, April 14, 1983; unnumbered, August 8, 1994.  In particular, in its August 8, 1994, private letter ruling, the Department rejected Southern's contention that Southern should be exempt from ROT for food and beverage sales to all student debit-card holders, which took place at a university-run dining facility open to the public.  Department of Revenue, Private Letter Ruling, unnumbered, August 8, 1994.

This record establishes that before and during the tax period in question, the Department's stated position--in virtually all instances--was that when a university-run dining facility was open to the public, all sales would be taxed.  During the same time, the Department issued only one private letter ruling granting an exemption from ROT to an exclusively educational institution (see Department of Revenue, Private Letter Ruling, No. 95-0195, May 12, 1995).  In our view, the most that can be inferred from the May 12, 1995, private letter ruling is that the Department decided to grant a very limited exemption to accommodate the particular circumstances facing that university.  Because the record shows that the Department had not established a clear policy against taxing food and beverage sales to holders of university-issued debit cards at university dining facilities open to the public, the May 12, 1995, private letter ruling did not establish a rule binding the Department in this case.

In so concluding, we note that Subway makes several policy-related arguments in support of its contention that for-profit businesses which have contracted with a university to operate on-campus restaurants and conduct debit-card sales should be exempt from ROT for food and beverage sales to holders of university-issued debit cards.  In particular, Subway asserts the following:  (1) "[o]ne of the prime subjects of privatization in the area of higher education *** is the provision of prepared food and beverages to students and staff with whom a university has contracted to furnish board"; (2) the "requirement that sales be made only to students and employees in a closed dining facility apparently exists solely to facilitate the Department *** in its audit function of sales to such individuals"; (3) section 130.2005(b)(4)(A) of the Code (86 Ill. Adm. Code §130.2005(b) (4)(A) (West CD-ROM April 1997)) "has not kept pace with data processing improvements which make it possible to identify and segregate cash transactions with the general public from debit  [-]card transactions with students and staff"; and (4) if the University, which is "an instrumentality" of the State, relies upon the accuracy of and "places its faith" in the debit-card system, "that should suffice for the administration of the [ROT] Act by the Department."  Whatever merit these assertions may possess, the appellate court is not the forum to which they should be addressed.  Instead, Subway should address its proposed change in the law to the institution in this state charged with making public policy--the General Assembly.  As an alternative, Subway could address its proposal to the Department.      

D. Uniformity Clause

Last, the Department argues that the difference in the taxation of Subway and the University under the ROT statutory scheme does not violate the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2).  We agree.

Article IX, section 2, of the Illinois Constitution provides as follows:

"In any law classifying the subjects or objects of non[]property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly.  Exemptions, deductions, credits, refunds[,] and other allowances shall be reasonable."  Ill. Const. 1970, art. IX, §2.

To survive scrutiny under the uniformity clause, a nonproperty classification must (1) be based on a real and substantial difference between the people taxed and those not taxed; and (2) bear some reasonable relationship to the object of the legislation or to public policy.  
Milwaukee Safeguard Insurance Co. v. Selcke
, 179 Ill. 2d 94, 98, 688 N.E.2d 68, 70 (1997).

The scope of a court's inquiry under the uniformity clause remains relatively narrow.  
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250, 665 N.E.2d 1246, 1251 (1996).  As the supreme court in 
Allegro Services
 explained:

"Statutes bear a presumption of constitutionality, and broad latitude is afforded to legislative classifications for taxing purposes.  [Citation.]  One challenging a non­property tax classification has the burden of showing that it is arbitrary or unreasonable, and if a state of facts can reasonably be conceived that would sustain the classification, it must be upheld."  
Allegro Services, Ltd.
, 172 Ill. 2d at 250-51, 665 N.E.2d at 1251.  

The following procedural process is used to determine whether a statute violates the uniformity clause.  Upon a good-faith uniformity challenge, a taxing body bears the initial burden of producing a justification for its nonproperty tax classification.  Once done, the plaintiff bears the burden of persuading the court that the justification is not supported by facts or is insufficient as a matter of law.  The plaintiff who fails to meet its burden of persuasion loses, and the tax classification will be upheld.  
Geja's Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 248-49, 606 N.E.2d 1212, 1216 (1992).

In this case, the Department has submitted a legally sufficient justification for imposing ROT on for-profit businesses which sell products for consumption to a university's students, faculty, and staff members, which bears a reasonable relationship to the legislation or public policy.  As the Department points out, a real and substantial difference exists between for-profit businesses, like Subway, and exclusively educational institutions.  The Department also notes that the University is exempt from ROT because it is an exclusively educational institution which operates a closed dining facility for the sole purpose of serving its students and employees.  In contrast, Subway is a for-profit business that is open to the general public and is in competition with several other fast-food restaurants in the area. 

Subway has failed to rebut the Department's justification.  Subway claims that the uniformity clause would be violated if students who purchase food and beverages at Subway's on-campus restaurants have to pay ROT while students who purchase food products at other university-run cafeterias in the State do not have to pay ROT.  Contrary to Subway's contention, the ROT is a tax on the 
seller
, not on the buyer of the goods.  See 
First National Bank v. Jones
, 48 Ill. 2d 282, 288, 269 N.E.2d 494, 497 (1971), quoting 
National Bank of Hyde Park v. Isaacs
, 27 Ill. 2d 205, 207, 188 N.E.2d 704, 705 (1963) (ROT "'is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature.  It is the legal incidence of the tax that controls'").  

We therefore conclude that the ROT statutory scheme, under which for-profit businesses, like Subway, must pay ROT on sales of products to a university's students, faculty, and staff members, while exclusively educational facilities, like the University, are exempt from ROT for such sales, does not violate the uniformity clause.  

Because (1) Subway was not exempt from ROT for its "sales at retail" to the University's students, faculty, and staff members; and (2) the uniformity clause was not violated, we hold that the trial court erred by granting Subway's motion for summary judgment and denying the Department's motion for summary judgment.  Accordingly, we remand with directions that the court grant the Department's motion for summary judgment. 

III. CONCLUSION

For the reasons stated, we reverse the trial court's order granting Subway's motion for summary judgment, reverse the court's order denying the Department's motion for summary judgment, and remand with directions that the court enter summary judgment in the Department's favor.

Reversed and remanded with directions. 

McCULLOUGH and KNECHT, JJ., concur.