NO. 4-01-0528

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of the Estate of ROBERT CHARLES HURST, Deceased,

ALICIA E. HURST and JULIE ANN HURST,

          Petitioners-Appellees and

          Cross-Appellants,

          v.

PATSY J. HURST, Individually, PATSY J. HURST, Administratrix With the Will Annexed of the Estate of ROBERT CHARLES HURST, Deceased; LORI L. HOFFERBERT, and TODD A. REID,

          Respondents-Appellants and

          Cross-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Woodford County

  No. 98P75

 

  Honorable

  John B. Huschen,

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

This appeal involves the interpretation of two written instruments, a promissory note and a will, and the possible use of extrinsic evidence.  Patsy J. Hurst, individually and as administratrix of the will annexed of the estate of Robert Charles Hurst, along with Lori L. Hofferbert and Todd A. Reid, cross-appellees, appeal the judgment of the trial court with respect to the promissory note and will, respectively.  Alicia E. Hurst and Julie Ann Hurst, cross-appellants, also appeal the trial court’s ruling concerning the Dead-Man’s Act (735 ILCS 5/8-201 (West 2000)).  We affirm in part, reverse in part, and remand the cause with directions.

I. BACKGROUND

Initially, the parties involved in these appeals necessitate an introduction.  Robert Charles Hurst (Chuck) married Diane Neises in September 1961.  Chuck and Diane had two children: Lori L. Hurst and Todd A. Hurst (Lori and Todd).  Chuck and Diane were divorced in April 1964, and Diane remarried to Alex Reid.  Diane and Alex legally adopted Lori (now Hofferbert) and Todd (now Reid).  In April 1965, Chuck married his second wife, Karan E. Hurst.  They had two children: Alicia E. Hurst and Julie A. Hurst (Alicia and Julie).  Chuck and Karan were divorced in April 1990.  Later, Chuck married his third wife, Patsy J. Hurst (Patsy).

A. The Note

In 1993, Chuck and Patsy Hurst decided to open and operate an adult entertainment club in Tazewell County.  Thereafter, with the assistance of counsel, Club Cabaret, Inc., was formed in which the Hursts retained a 51% controlling interest.  The stock certificate indicated the shares were issued to “Robert C. Hurst and Patsy J. Hurst, Joint Tenants.”  In 1996, the Hursts decided to sell their interest in the business to other individuals involved with the corporation.  Attorney Richard D. McCoy prepared a promissory note (note) and mortgage on behalf of the Hursts.  Chuck and Patsy allegedly told McCoy they wanted the note to be payable to both of them jointly so if one of them died, the survivor would become the sole owner of the note.  McCoy drafted the note which read, in part:

“FOR VALUE RECEIVED, the undersigned, CLUB CABARET, INC. (Maker), promises to pay to the order of ROBERT C. HURST and PATSY J. HURST, or either of them, or any holder of this note (Payee) the sum of U.S. $1,140,000.00 ***.”

Similarly, the mortgage stated, in relevant part:

“This mortgage is made this 26 day of September 1996, by CLUB CABARET, INC., an Illinois corporation (Mortgagor), *** and delivered to ROBERT C. HURST and PATSY J. HURST (jointly and severally (Mortgagee)) ***.”

Chuck and Patsy accepted the note believing it conformed to their wishes of joint ownership with each having a full right of survivorship.  The corporation made monthly payments in accordance with the terms of the obligation by electronic transfer to an account at Morton Community Bank.  Chuck and Patsy held the bank account as joint tenants with right of survivorship.

In October 1997, Chuck and Patsy sought out McCoy for his services as to their estate plans.  They sought assurance from McCoy the proceeds of the note would be paid to the survivor of Chuck and Patsy if one predeceased the other.  McCoy checked the note and assured them it was owned jointly with right of survivorship.

In June 1998, Chuck died before completing his estate planning.  It was believed he died without a will.  In August 1998, Patsy was appointed independent administratrix of the estate.

In August 1999, Alicia and Julie filed a petition for citation to discover assets against Patsy, in her individual and representative capacities, and against Club Cabaret, Inc.  The petition alleged the payees of the promissory note held it as tenants in common and not as joint tenants.  Thus, Chuck’s undivided one-half interest in the note passed into his estate and should be inventoried as an asset of his estate.  Patsy, believing the note created a joint tenancy, did not include the note in Chuck’s estate, maintaining she was the sole owner.  In April 2000, Alicia and Julie filed a motion for summary judgment on their petition for citation to discover assets, arguing the note and mortgage are clear and unambiguous on their face and create a tenancy in common.

In February 2000, Patsy, in her individual capacity, filed a complaint to reform the note.  The complaint sought a reformation of the note to express the true intent of Patsy and Chuck, by substituting the words

“ROBERT C. HURST and PATSY J. HURST, or either of them, as joint tenants with right of survivorship”

in place of the phrase

“ROBERT C. HURST and PATSY J. HURST, or either of them.”

In March 2000, Alicia and Julie filed an answer to the complaint, admitting most of the allegations but stating the note speaks for itself.

In October 2000, Patsy filed a motion for summary judgment and attached affidavits from Richard McCoy, Robert Tudor, and James Mamer.  In his affidavit, McCoy stated Chuck wanted the note to be drafted jointly with Patsy with right of survivorship.  He believed he was fulfilling Chuck’s wishes by using the language “or either of them.”  Tudor, vice-president of Club Cabaret, Inc., stated the corporation made monthly payments by electronic transfer to Chuck and Patsy.  Mamer, president of Morton Community Bank, stated Chuck and Patsy held a joint account at the bank as joint tenants with right of survivorship.

Alicia and Julie filed a motion to strike the three affidavits as either irrelevant or barred by the Dead-Man’s Act.  Specifically, they alleged McCoy’s affidavit was barred by the Dead-Man’s Act because McCoy was a person directly interested in the action based on Patsy’s malpractice action against him.  Patsy filed a professional negligence suit, in December 1999, against Richard McCoy, Kirk Bode, and McCoy & Bode for the alleged negligence in drafting the note.  Patsy argued the Dead-Man’s Act did not apply because McCoy was not directly interested in the action and had not been called to testify on his own behalf.  

Alicia and Julie also filed a cross-motion for summary judgment arguing the note’s language created a tenancy in common.  They argued if the McCoy affidavit was inadmissible, Patsy had no evidence of a mistake to justify a reformation of the note.  They claimed the mistake alleged was one of law, not fact, which was not the proper subject for reformation.

In November 2000, the trial court denied Alicia and Julie’s motion to strike the affidavits.  As to the McCoy affidavit, the trial court found McCoy was not directly interested in the action because, regardless of the outcome of this case, the malpractice action would still be pending.

In May 2001, the trial court, in an amended order, denied Patsy’s motion for summary judgment and granted Alicia and Julie’s cross-motion for summary judgment.  The trial court reasoned the note was a tenancy-in-common instrument and, since there was a mistake of law, not fact, reformation was prohibited.  The court declared Chuck’s estate as the owner of an undivided one-half interest in the note and the mortgage that secures it.

Patsy filed a posttrial motion to reconsider, arguing equity provided an exception to the general rule that a mistake of law cannot be reformed and her case fell within the exception.  The trial court denied the motion to reconsider.  The court acknowledged some mistakes of law may be reformed, but attorney McCoy’s mistake was a legal one pertaining to a general rule of law, and equity did not offer relief.  This appeal and cross-appeal followed.

B. The Will

In October 1999, Chuck’s original will, dated January 30, 1991, was found in the safe deposit box of the law firm of McCoy & Bode.  The will stated, in relevant part:

“ARTICLE II

I give all of my personal effects, household goods, automobiles, and all other items of goods and chattels to my children who survive me in shares of substantially equal value, with the descendants of any deceased child to take the deceased child’s share 
per
 
stirpes
.  Currently I have two children whose names are as follows:

ALICIA ELIZABETH HURST and JULIE ANN HURST

If any child of mine has not attained legal age at my death, the executor may deliver his or her share of goods and chattels to the guardian of his or her person or estate, or to the person with whom he or she resides, for the benefit of the child, and the receipt of this guardian or person shall discharge the executor.

ARTICLE III

I give the residue of my estate, excluding any property over which I have a power of appointment, to my children who survive me in equal shares with the descendants of any deceased child to take the deceased child’s share 
per
 
stirpes
.  If any child of mine is under the age of 25 years at the date of my death, I direct the executor to give said residue to my ex-wife, KARAN E. HURST, as trustee for the benefit of my children (Children’s Trust).

***

ARTICLE VIII

I designate my wx-wife [
sic
], KARAN E. HURST, as the guardian of the persons and estates of my children.  I direct that no security be required on the bond of any guardian designated by me.”

In November 1999, Alicia and Julie filed a petition to construe decedent’s will naming as defendants Patsy, Lori, and Todd.  The petition sought relief from the court by way of an order construing decedent’s will so the word “children” is defined to include only Alicia and Julie, and specifically to exclude Lori and Todd.  In March 2000, Lori and Todd both filed responses to the petition to construe decedent’s will.  The responses sought a declaration that Lori and Todd are heirs under the Illinois Probate Act of 1975 (755 ILCS 5/1-1 through 30-3 (West 2000)), and an order construing decedent’s will so the term “children” is defined to include Lori and Todd for all purposes except article II.

In April 2000, Alicia and Julie filed a motion for judgment on the pleadings, arguing decedent’s will did not contain a latent ambiguity and demonstrated decedent’s intention to disinherit his two children not named in the will: Lori and Todd.  In June 2000, the trial court found the will contained a latent ambiguity and parol evidence was necessary to determine whether Lori and Todd should be included.  In December 2000, an evidentiary hearing was held on the petition to construe the will.  The parties did not produce any extrinsic evidence but relied on their arguments based on the language of the will.

In May 2001, the trial court entered judgment in favor of Alicia and Julie and against Lori and Todd.  The trial court found Alicia and Julie were the only persons who take under decedent’s will because case law tended to abolish the traditional rules regarding class gifts and instead reclassify the gift as an individual bequest when a person is specifically identified.  This appeal followed.

II. ANALYSIS

A. The Note

Patsy argues the trial court erred in granting summary judgment in favor of Alicia and Julie.  We agree.  As our analysis of the note involves a question of law, we review the trial court’s decision 
de
 
novo
.  See 
Subway Restaurants of Bloomington-Normal, Inc. v. Topinka
, 322 Ill. App. 3d 376, 381, 751 N.E.2d 203, 208 (2001) (question of law when dealing with motion for summary judgment). 

The general rule is that before a court will reform an instrument on the ground of mistake, "'"the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another."' [Citations.]"  
Zannini v. Reliance Insurance Co. of Illinois, Inc.
, 147 Ill. 2d 437, 449, 590 N.E.2d 457, 462 (1992); see also 
Spies v. DeMayo
, 396 Ill. 255, 272, 72 N.E.2d 316, 324 (1947) (to justify reformation, mistake must be of fact and not of law); 
Ambarann Corp. v. Old Ben Coal Corp.
, 395 Ill. 154, 166, 69 N.E.2d 835, 841 (1946).

While this general rule has had a long history, courts of equity have created exceptions in the interests of justice.  Our supreme court in 
Peter v. Peter
, 343 Ill. 493, 498, 175 N.E. 846, 849 (1931), noted “[w]hile it has been stated as a general rule that a mistake of law pure and simple is not adequate ground for relief in equity, yet even when the mistake is one of law equity sometimes intervenes.  [Citation.]  Courts of equity have aided mistaken parties because of the demands of justice.”  Later, the court indicated “[r]elief is not barred in a proper case because the mistake is one of law.”  
Darst v. Lang
, 367 Ill. 119, 123, 10 N.E.2d 659, 662 (1937).  The court reiterated this principle when it revisited the issue of granting relief to mistakes that include elements of law 
in 
Barkhausen v. Continental Illinois National Bank & Trust Co. of Chicago
, 3 Ill. 2d 254, 269-70, 120 N.E.2d 649, 657 (1954).

In 
Harbaugh v. Hausman
, 210 Ill. App. 3d 715, 720-22, 569 N.E.2d 523, 527-29 (1991), this court cited 
Barkhausen
 for the proposition that a court of equity can grant relief even in cases where the mistake is one of law.  In 
Harbaugh
, the court stated "where a person is mistaken 'as to his own antecedent existing legal rights,' relief may be granted in regard to a subsequent contract he enters into in reliance on his mistaken belief as to antecedent rights."  
Harbaugh
, 210 Ill. App. 3d at 722, 569 N.E.2d at 528, quoting 3 J. Pomeroy, Equity Jurisprudence §849, at 308 (5th ed. 1941).

Unlike 
Harbaugh
, this case does not involve a mistake as to an antecedent existing legal right.  Nevertheless, we find the rationale of 
Barkhausen
 applicable to the circumstances presented in this case.  As the 
Barkhausen
 court stated:

"But, appellee says that this court is powerless to remedy the mistake, if there was one, because it was a mutual mistake of law.  What constitutes a mistake of law or a mistake of fact is a subject upon which many conflicting and irreconcilable discourses have been written.  In Illinois there are well-reasoned opinions that hold that relief is appropriate whether one views a mistake to be one of fact or one of law.  
Darst v. Lang
, 367 Ill. 119, [at 123-24, 10 N.E.2d at 662,] is one that is peculiarly applicable.  In that case[,] aging parents deeded to their beloved daughter their farm, intending to reserve unto themselves a life estate but mistakenly failing to do so.  This daughter[,] after several years, upon learning of their failure to reserve their life estate, sought to deprive her father and mother of the proceeds of the premises which they had been enjoying uninterruptedly since the execution of the deed.  In that proceeding[,] reformation was sought because of a mistake, but the daughter urged the applicability of the rules that extrinsic evidence cannot be considered and that a court of equity is powerless to remedy a mistake of law.  The court in rejecting those arguments used this language which we believe appropriately applies to the situation before us: 'Relief is not barred in a proper case because the mistake is one of law.'"  
Barkhausen
, 3 Ill. 2d at 269, 120 N.E.2d at 657.

In the case 
sub
 
judice
, Chuck and Patsy Hurst were the owners of a restaurant and nightclub which they operated as a corporation.  The Hursts owned a 51% controlling interest in the corporation represented by a stock certificate registered in both of their names as joint tenants with right of survivorship.  They agreed to sell their interests in the business and hired a lawyer to represent them in the transaction.  Their lawyer prepared the documents necessary to consummate the sale.  The documents included the preparation of a promissory note payable to Chuck and Patsy for the purchase of the stock.  Chuck and Patsy told their lawyer they wanted one promissory note payable to both of them jointly so that if one of them died, the other became the sole owner of the note.  After the note was executed, the corporation began making monthly payments in accordance with the terms of the note to a bank account set up by Chuck and Patsy as a joint tenancy with right of survivorship.  Chuck and Patsy relied upon their legal counsel, who apparently believed that naming Chuck and Patsy, "or either of them," as payees was sufficient to establish a joint tenancy.  

Alicia and Julie argue other supreme court decisions 
plainly state that no mistake of law is reformable by a court of equity (see 
David v. Schiltz
, 415 Ill. 545, 114 N.E.2d 691 (1953); 
Wilcox v. Natural Gas Storage Co. of Illinois
, 24 Ill. 2d 509, 182 N.E.2d 158 (1962); 
Zannini v. Reliance Insurance Co. of Illinois, Inc.
, 147 Ill. 2d 437, 509 N.E.2d 457 (1992)) and that 
Barkhausen
 has dubious precedential value.  We are not persuaded inasmuch as 
Wilcox
 and 
Zannini
 did not even cite 
Barkhausen
, and 
David
 was decided prior to the 
Barkhausen
 decision.  Although each opinion does state that equity addresses only mistakes of fact and not law, all three are decidedly distinguishable from the facts present here.  In 
David
, an erroneous legal description in a deed was deemed a mistake of fact and the court reformed the deed some 16 years after its original delivery.  
David
, 415 Ill. at 554, 114 N.E.2d at 696.  In 
Wilcox
, the mistake was unilateral in nature and reformation, therefore, was not available.  
Wilcox
, 24 Ill. 2d at 513, 182 N.E.2d at 160.  In 
Zannini
, an insurance contract as issued did not set forth the true agreement entered into between an insured and an agent of the insurance company.  
Zannini
, 147 Ill. 2d at 440-41, 509 N.E.2d at 458.  The supreme court deemed the mistake to be one of fact and remanded for reformation of the contract.  
Zannini
, 147 Ill. 2d at 457, 509 N.E.2d at 465-66.  Thus, the general principle of law--
i.e.
, no mistake of law is reformable by a court of equity`--was not at issue in any of these cases.  

Alicia and Julie also argue that even if a mistake of law can be remedied by a court of equity, the mistake here was a "pure and simple" mistake which does not fall within the exception allowing for reformation of a mistake of law.  We disagree.

The supreme court in 
Barkhausen
 stated, in part:

“'Whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injury to others, equity will afford him redress.'"  
Barkhausen
, 3 Ill. 2d at 270, 120 N.E.2d at 657-58, quoting 
Peter
, 343 Ill. at 499-500, 175 N.E. at 849.

Here, it has been clearly shown Chuck and Patsy acted under a common mistaken belief that they were named as payees to hold the note as joint tenants rather than as tenants in common.  Their ownership as tenants in common defeats the right of survivorship, and thus it works an injustice upon them.  We hold that such an injustice under these facts may be avoided by the equitable remedy of reformation.  Our decision today finds further support by leading authorities on the law of contracts.  See Restatement (Second) of Contracts §151, Comment b, at 384 (1981); 13 W. Jaeger, Williston on Contracts §1585, at 555-56 (3d ed. 1970).  “The desirable rule governing reformation is that if the writing actually executed does not contain all that the parties agreed that it should contain, it will be reformed whether the reason why it fails to express the agreement is due to a mistake of fact or of law.”  13 W. Jaeger, Williston on Contracts §1586, at 559 (3d ed. 1970).  

Alicia and Julie next argue the note cannot be reformed because (1) the mistake is unilateral only and (2) Patsy has an adequate remedy of law.  We disagree with both of these contentions.  

On the question of mutuality, Alicia and Julie claim the maker of the note, Club Cabaret, Inc., has not been shown to be a party to the mistake.  This claim, however, avoids the heart of the issue before this court.  The maker of the note had no interest in whether Chuck and Patsy held the note as joint tenants or tenants in common.  The mutual mistake at issue was between Chuck and Patsy.  There is no claim or issue before this court that Club Cabaret, Inc., intended for the note to be payable to Chuck and Patsy as tenants in common rather than as joint tenants.  Hence, the argument that no mutual mistake exists is unavailing to Alicia and Julie.  

We also disagree Patsy is precluded from seeking reformation because she has an adequate remedy of law in pursuing her malpractice claim against McCoy.  The appellees cite no cases in support of this proposition, and we decline to hold the malpractice claim adequately remedies the ramifications of the mutual mistake of Chuck and Patsy or justifies a windfall to Alicia and Julie never intended by Chuck and Patsy.  

The Hurst sisters' final argument is that Richard McCoy's affidavit is barred by the Dead-Man's Act (735 ILCS 5/8-201 (West 2000)).  Patsy argues the Dead-Man's Act does not apply in this litigation and does not bar McCoy's testimony.  We agree with Patsy.  The Dead-Man's Act provides in pertinent part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased ***."  735 ILCS 5/8-201 (West 2000).

The trial court found, and we agree, the Dead-Man's Act does not apply because McCoy is not a person directly interested in the action and McCoy was not called to testify on his own behalf.  

A witness may be disqualified from testifying if the witness is "directly interested in the action."  The witness' interest in the judgment must be such that a monetary “gain or loss will come to the witness directly as the immediate result of the judgment.”  
Michalski v. Chicago Title & Trust Co.
, 50 Ill. App. 3d 335, 339, 365 N.E.2d 654, 657 (1977), citing 
Brownlie v. Brownlie
, 351 Ill. 72, 76, 183 N.E. 613, 615 (1932).  

In 
Michalski
, the plaintiffs maintained that deeds in their favor had been executed and delivered to the defendant trust company, but the deeds were unrecorded and lost, mislaid, or destroyed.  
Michalski
, 50 Ill. App. 3d at 337, 365 N.E.2d at 655.  The attorney who drafted the deeds on behalf of the grantors was allowed to testify as to his conversations and consultations with the grantors when the dispute arose after the death of the grantors.  
Michalski
, 50 Ill. App. 3d at 338, 365 N.E.2d at 656.  Although the attorney involved had not been sued, he did testify that he had notified his insurance company of the possibility of a claim against him for the handling of the deeds.  
Michalski
, 50 Ill. App. 3d at 338, 365 N.E.2d at 656.  In finding the attorney's testimony was admissible, the 
Michalski
 court stated, "[n]o matter what the result of these proceedings would be, there would be no certain, direct, or pecuniary effect on Piggott [(the attorney)].  If an interest in an action is of a doubtful or uncertain nature, that fact may go to the credibility of the witness, but not to his competency."  
Michalski
, 50 Ill. App. 3d at 339, 365 N.E.2d at 657.  

Although a malpractice case had not been filed against the attorney in 
Michalski
, and a suit has been filed against McCoy here, their positions are similar.  Neither stood to benefit directly from the outcome of the case in which he testified.  The interest of the witness must be direct and be such that a pecuniary gain or loss will inure to the witness directly as the immediate result of the judgment.  

Appellees also cite 
Groce v. South Chicago Community Hospital
, 282 Ill. App. 3d 1004, 669 N.E.2d 596 (1996), and 
Hoem v. Zia
, 239 Ill. App. 3d 601, 606 N.E.2d 818 (1992), but neither case supports their position.  In both cases, a physician's testimony was barred when the physicians offered testimony as to conversations with the decedent in malpractice actions filed against the physicians by the decedents' estates.  

The Dead-Man's Act is also not applicable because McCoy, as a nonparty witness, was not called to testify on his own behalf.  McCoy specifically admitted that he had drafted the note at issue and that he advised his clients the language in the note established a joint tenancy with the right of survivorship.  McCoy was not called to testify on his own behalf and his testimony was therefore not barred by the Dead-Man's Act.  See 
In re Estate of Sewart
, 274 Ill. App. 3d 298, 652 N.E.2d 1151 (1995); 
In re Estate of Henke
, 203 Ill. App. 3d 975, 561 N.E.2d 314 (1990).

Based upon our findings, we need not address the issues pertaining to joint tenancy or the allegedly ambiguous language in the note.  Therefore, we reverse the trial court’s judgment granting Alicia and Julie’s motion for summary judgment and remand to the trial court to reform the note indicating a joint tenancy with right of survivorship between Chuck and Patsy.

B. The Will

Lori and Todd argue Chuck’s will is latently ambiguous, and they should come within the meaning of Chuck’s “children” under the residuary clause of article III.  We disagree.

The cardinal rule in the construction of wills is to ascertain the true intention of the testator as expressed in the will.  
In re Estate of Cancik
, 106 Ill. 2d 11, 17, 476 N.E.2d 738, 741 (1985); 
In re Estate of Garrett
, 325 Ill. App. 3d 123, 126, 756 N.E.2d 920, 924 (2001).  

“'This intention is to be gathered from the words and expressions used in the will itself.  The different provisions and parts of the instrument are to be compared with and read in the light of each other, so as, if possible, to deduce therefrom an [
sic
] 
harmonious
 
whole
.  The general intent of the will is to be carried into effect at the expense of any particular intent, provided such general intent is consistent with the rules of law, for when there are conflicting intents that which is the most important must prevail.’”  (Emphasis in original.)  
Morrison v. Tyler
, 266 Ill. 308, 319, 107 N.E. 602, 605 (1914), quoting 
Howe v. Hodge
, 152 Ill. 252, 266, 38 N.E. 1083, 1086 (1894)
.

If the language of a will is clear and unambiguous, extrinsic evidence is not admitted to vary that language.  
Steinke v. Novak
, 109 Ill. App. 3d 1034, 1038, 441 N.E.2d 883, 886 (1982).  However, where latent ambiguities exist in the will, extrinsic evidence will be considered to determine the testator’s intent.  
In re Estate of Levin
, 231 Ill. App. 3d 634, 637, 596 N.E.2d 722, 725 (1992).  “A latent ambiguity occurs when the will appears clear on its face but some fact external to the will reveals that a description of a bequest or of a legatee in the will is inadequate to determine who or what was intended by the testator.”  
Coussee v. Estate of Efston
, 262 Ill. App. 3d 419, 424, 633 N.E.2d 815, 818 (1994).

In the case 
sub
 
judice
, Chuck devised his personal effects in article II to his children who survived him.  Thereafter, he stated: “Currently I have two children whose names are as follows: ALICIA ELIZABETH HURST and JULIE ANN HURST.”  By specifically designating his children as Alicia and Julie, Chuck’s indication was to include them within the meaning of “my children.”

Our supreme court has noted the “words 'child' and 'children' are not technical legal terms to which a fixed and determined meaning must be given regardless of the sense in which they are employed, but they are flexible and subject to construction, in order to give effect to the testator’s intention.”  
Beall v. Beall
, 331 Ill. 28, 32-33, 162 N.E. 152, 154 (1928).  When Chuck drafted his will to indicate he currently had two children, Alicia and Julie, his further references to “my children” were to include them and to exclude Lori and Todd, who were alive at the time the will was drafted.  The fact that Chuck inserted the word “currently” does not make the will ambiguous because, although future children could have been born to Chuck, Lori and Todd were not to be considered within the meaning of “children.”  As the meaning of the word “children” is flexible and not rigid, we find Alicia and Julie were to take under Chuck’s will to the exclusion of Lori and Todd.

Our conclusion is further supported by reading the particular provisions of the will in light of each other to deduce that “harmonious whole.”  As stated, article II devises Chuck’s personal effects to his children, Alicia and Julie.  Article III devised the residue of Chuck’s estate “to my children who survive me.”  Further, article III states Chuck’s ex-wife, Karan Hurst, mother of Alicia and Julie, was to be given the residue as trustee for the benefit of his children if any child was under the age of 25.  Article VIII also designated Karan Hurst as the guardian of the persons and estates of Chuck’s children.  Nowhere in Chuck’s will is there any mention of Lori and Todd or of his first wife.  The necessary implication from the reading of the entire will is that Chuck sought to provide for Alicia and Julie (and perhaps a child born in the future) to the exclusion of Lori and Todd.

Although we are aware of the maxim: “No will has a twin brother,” and thus analogies to other cases are less than exacting, we find our supreme court’s decision in 
Young v. Whisler
, 19 Ill. 2d 501, 504, 167 N.E.2d 191, 192 (1960), to be helpful.  In that case, the decedent devised a will which provided, in part, that in the event his wife predeceased him, all the property would go "to my children, Zella Lee Rath and Thelma Louise Yoeman, in equal parts, share and share alike.”  
Young
, 19 Ill. 2d at 503, 167 N.E.2d at 192.  The decedent had four children: George and Donald Young, sons by his first wife, and Zella and Thelma, daughters by his second wife.  
Young
, 19 Ill. 2d at 503, 167 N.E.2d at 192.  George and Donald argued the will’s language pertaining to “my children, Zella Lee Rath and Thelma Louise Yoeman” was latently ambiguous and uncertain because the decedent had two sons by a prior marriage.  
Young
, 19 Ill. 2d at 503, 167 N.E.2d at 192.

The supreme court, in deciding whether the will’s language created a latent ambiguity stated:

“It is readily apparent that the devise, 'to my children, Zella Lee Rath and Thelma Louise Yoeman,' falls within the rule that where legatees are named as individuals and also described as a class, and there is nothing more to show the testator’s intention, the gift by name constitutes a gift to individuals, to which the class description is added by way of identification. [Citations.] Moreover, the natural meaning of the words 'my children' in the phrase is to identify the legatees and their relationship to the testator.  The words are in no way inconsistent with the two names which follow.  Since the named individuals are both children of the testator, they are accurately described, and the existence of two other children by a former marriage does not impair the accuracy of that description, nor render it ambiguous.”  
Young
, 19 Ill. 2d at 504-05, 167 N.E.2d at 193.

The court found the clause giving the decedent’s property to named individuals had the effect of falling under “the rule that ordinarily a will purporting to devise and bequeath all property of a testator to a named beneficiary is equivalent to the expression of an intention to disinherit all other persons.”  
Young
, 19 Ill. 2d at 505, 167 N.E.2d at 193.  Further, had the decedent inserted language indicating his intention to include his sons in the will, the court noted it would have reason to not apply the rule.  “The fact that the testator had additional children cannot of itself bar our giving effect to his expressed intention to devise the property to the named children.”  
Young
, 19 Ill. 2d at 505-06, 167 N.E.2d at 193.  Thus, the supreme court found no latent ambiguity from the fact the testator had other children in existence.  
Young
, 19 Ill. 2d at 506, 167 N.E.2d at 193.

In the present case, the fact that Chuck had other children in existence, namely Lori and Todd, does not create a latent ambiguity.  The will’s language in article II specifically indicates Alicia and Julie were Chuck’s children.  Further references to “children” in later clauses describe the identities set forth by Chuck in article II.  The entire will, comparing the parts and provisions and reading them in light of each other, leads to the conclusion that Chuck’s intent in articles II and III was to devise his property to his children, Alicia and Julie.  It is a basic principle that courts have a duty to construe wills as they find them rather than change or rewrite them.  
In re Estate of Laas
, 134 Ill. App. 3d 504, 509, 480 N.E.2d 1183, 1187 (1985).  With this in mind and based on a reading of the four corners of Chuck’s will, we find the language is clear and unambiguous.  Thus, the trial court’s order that only Alicia and Julie take under the will was proper.

III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand the trial court's judgment with directions.

Affirmed in part and reversed in part; cause remanded with directions.

MYERSCOUGH and APPLETON, JJ., concur.