(No. 14630.—Decree affirmed.)
MYRTLE L. HOLBROOK *et al.* Appellants, *vs.* MARY TOMLIN-
SON, Appellee.

*Opinion filed October 21, 1922.*

1. CONTRACTS—*misunderstanding as to the law is not ground
for relief.* If an agreement or written instrument expresses the
thought and intention which the parties had at the time of making
it, no relief, affirmative or defensive, will be granted with respect
to it, even though their thought and intention would have been
different if they had been correctly informed as to the legal mean-
ing and effect of the terms and provisions of the instrument.

2. SAME—*evidence must be certain and unequivocal to reform a
contract for mistake.* The reformation of a contract on account of
an alleged mistake will not be granted upon a probability or upon
a mere preponderance of the evidence or upon evidence that is
loose, equivocal or contradictory, but evidence of the mistake must
amount to a certainty.

3. SAME—*erroneous advice of counsel is not ground for relief
in equity.* The erroneous advice of an attorney as to the law is
not sufficient ground for relief in equity as to an alleged mistake
in a written instrument.

4. DEEDS—*when deeds of settlement will not be set aside be-
cause of alleged mistake of law.* Deeds of settlement between the
widow of a deceased intestate and the heirs by a former deceased
wife will not be set aside at the suit of the heirs on the ground
that they misunderstood the rights of the widow and deeded her
one-third in fee instead of the life estate which the statute allowed
her, where the attorney who was selected by all the parties testifies
that he informed them as to the rights of all the parties under the
statute and where there is no evidence of any intention on the part
of any of the parties to perpetrate a fraud.

APPEAL from the Circuit Court of Bureau county; the
Hon. JOE A. DAVIS, Judge, presiding.

R. E. FARRAND, and DALE & HARVISON, for appellants.

J. L. SPAULDING, CAIRO A. TRIMBLE, and PERRY D.
TRIMBLE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill was filed in the circuit court by appellants, Myrtle L. Holbrook and Clara M. Holbrook, daughters of the first wife of Charles Tomlinson, deceased, against Mary Tomlinson, the second wife. At the time of his death, in 1919, Tomlinson owned a farm of 120 acres located near Mineral, in Bureau county, a homestead in that village, and personal property valued at about $7000. He died intestate. After his death his daughters and the widow agreed upon a division of the property among themselves and quit-claim deeds were drawn transferring portions of the farm. Thereafter appellants, claiming that they had misunderstood what their legal rights were at the time they made the agreement, filed this bill to set aside the deeds, praying that the property might be divided in accordance with the laws of this State on the subject. After a hearing in the trial court the bill was dismissed for want of equity, and the case has been brought to this court by appeal.

Appellants testified in support of the allegations in their bill that at the time they signed the deeds dividing the farm they thought the widow was legally entitled to a full one-third in fee of the 120-acre farm; that when they learned that she was only entitled to a life estate in one-third of the farm they called her attention to that fact and asked her to correct the mistake and cancel the deeds, but she declined to comply with the request.

It appears from the record that immediately after the death of Tomlinson his two daughters, Myrtle and Clara, and the husband of Clara, met at the homestead of the deceased, and the three, with the widow and her brother, drove to Princeton, the county seat, and conferred with a lawyer with whom none of them had ever talked before, with reference to their respective rights in the estate. The two daughters and the husband of Clara agreed in their testimony that they understood the lawyer to tell them, in the presence of the widow, that as there were only the two

daughters and the widow, each of them was entitled to one-third of the real estate; that at this first meeting, after a conference with the lawyer as to their rights, they agreed upon the appointment of an administrator of the estate, and the lawyer drafted the preliminary papers for the purpose of having the administrator appointed, and they also decided on three neighbors to nominate as appraisers; that they thereupon all returned to their home in Mineral, and the two daughters and the husband of Clara conferred together as to the division of the property in accordance with their understanding of the lawyer's statement as to their rights; that they thereupon asked the brother of appellee, Frank Steele, who was still at the home, to present the result of their conference concerning the division to her, which he did, and finding her not satisfied as to the proposed division a different plan was suggested; that after further conference the daughters agreed to a division giving forty acres to appellee and the other eighty acres to appellants; that they further agreed that they would go to the lawyer's office again and make the division in accordance with their understanding; that on the following day the two daughters, the husband of Clara and the widow's brother went again to the lawyer's office in Princeton, and Elmer Holbrook, the husband of Clara, told the lawyer of the arrangement that had been made as to the division of the real estate, and also the understanding that the widow was to keep the homestead as long as she lived and then it was to be divided among the heirs, and asked the lawyer to draw deeds to effect this division.

Claude Brown, the lawyer who was employed by the heirs, testified that at the first interview he told the various parties of their respective interests in the estate, including the rights of the widow as to her widow's award and interest in the personal property, her life interest in one-third of the real estate as dower, and her homestead rights. He denied that he told them at the first interview, as testified

to by appellants, that the two daughters and the widow each had a full one-third interest in the real estate, and testified that he told them of their rights just as the statutes of this State provided; that after the appointment of the administrator, on their request that he was to act as the attorney, he went ahead in the preparation of the papers to properly administer the estate, and that when they came back the second visit and asked him to draw quit-claim deeds to divide the property, he asked the widow and the two daughters, in the presence of the others, whether they understood what their rights were in the property, and that he re-stated what those rights were; that they all said they understood them to be as he had explained, and that he then prepared, in accordance with their agreement, quit-claim deeds to divide the property, giving forty acres nearest the homestead to the widow and the other eighty acres to one of the daughters, being told at that time that the daughters had agreed that the eighty was to be given to Myrtle instead of being divided between both daughters, because of the fact that Clara had received more than her share from her grandfather's estate and that therefore they agreed to even up by giving Myrtle the whole eighty from their father's estate.

Appellee and her brother, both of whom were present at the two interviews at the lawyer's office, agreed substantially with the attorney as to what he explained to be the interest of the widow in the estate, although the widow and her brother were not entirely clear as to the exact interest that the widow or the two daughters had in the property. It also would appear from the testimony of the two daughters that they were not entirely clear as to what the attorney did say in these interviews as to the widow's homestead and dower interests in the property. Neither the daughters nor the widow seemed to understand clearly the meaning of the terms "dower interest," "widow's award" and "homestead." It is clear, also, from the testimony that at the first interview, when the administrator was agreed upon

and the names of the desired appraisers were suggested, the widow's award was discussed, and that shortly thereafter appraisers were appointed by the court in accordance with the suggestion of all the parties, and the appraisers fixed the amount of the widow's award. It also appears from the evidence that at the time of the division of the farm between the widow and daughters it was agreed that the two daughters should be charged with previous advancements made by their father, and that after the widow's award had been fixed by the appraisers at $1500 the daughters thought this too high, and after some discussion it was agreed between them that the widow's award should be left as fixed by the appraisers and that the amounts advanced to the two daughters during their father's lifetime should be canceled and considered paid.

The division of the real estate was made in August, 1919, and quit-claim deeds were executed to carry out the agreement. One of the daughters, Myrtle Holbrook, testified that in July or August, 1920, she for the first time learned through an item in the legal department of a Chicago newspaper that the widow's share in real estate, where there was no will, was different from the settlement they had made and different from what they had been informed by the attorney to be the law, as she understood. She further testified that she sent the newspaper clipping to her sister, and in February, 1921, they visited appellee to tell her of the mistake that was made and request a different adjustment of the estate so as to comply with the provisions of the Illinois statutes. Myrtle had previously written to attorney Brown, in September, 1920, saying that when the deeds were made she understood appellee was entitled to a third, to do with as she pleased at her death; that she and her sister desired to hold the land together; that they would have been willing that the widow should have even more than a third of the income for life but thought the property should revert to themselves or their heirs after

the widow's death, and inquired if the deeds they had made would hold good under any circumstances. To this letter the attorney replied that as he understood the situation at the time of the division and from how the papers were then drawn, the widow was to take the forty acres of land as her own property; that he thought there could be no misunderstanding as to that being the agreement at the time the deeds were executed. Elmer Holbrook, the husband of the daughter Clara, testified that he would not have signed a quit-claim deed but for the fact that he understood they had been advised by Brown that the widow was entitled to the full one-third of the real estate; and the two daughters practically testified that they would not have signed the deeds if they had not understood from Brown to the same effect. Appellee testified that when the two daughters came to her to complain that a mistake had been made in transferring and dividing the property, Myrtle Holbrook said to her that she could not have had the forty acres of land if they had not given it to her. Myrtle denied that she made this statement. In addition to the testimony of appellee's brother, Frank Steele, as to his talk with appellants concerning the division of the property, Belle Colburn, who was employed at the home of the deceased before and after his death, testified that she heard Steele tell appellee that appellants would deed her forty acres of the farm and that she was to deed them the other eighty acres.

If an agreement or written instrument expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be that their intention would have been different if they had been correctly informed as to the law. (2 Pomeroy's Eq.

Jur.—3d ed.—sec. 843.)   The reformation of a contract on account of an alleged mistake is never granted upon a probability or upon a mere preponderance of the evidence but only upon evidence amounting to a certainty.   (*Christ v. Rake,* 287 Ill. 619, and cases cited.)   The reformation of a document because of a mistake will not be granted upon evidence that is loose, equivocal or contradictory.   "The proof must be such as will strike all minds alike as being unquestionable and free from reasonable doubt."   (*Anderson v. Stewart,* 281 Ill. 69.)   The authorities all require that parol evidence of the mistake and of the alleged modification must be of such a nature that the allegations are "established beyond a reasonable doubt."   2 Pomeroy's Eq. Jur.—3d ed.—sec. 859.   See to the same effect, *Lines v. Willey,* 253 Ill. 440.

Under the authorities it is clear that relief should not be granted in this case as prayed, under the allegations of the bill and the proof presented in support thereof.   The appellants place their reliance largely on the alleged erroneous advice of an attorney.   The erroneous advice of an attorney is not sufficient ground for relief in equity as to an alleged mistake in a written instrument.   (*Weed v. Weed,* 94 N. Y. 243; *Treadwell v. Clark,* 108 N. Y. Supp. 733.) A general mistake of law, pure and simple, is not adequate ground for relief because of such mistake.   (2 Pomeroy's Eq. Jur.—3d ed.—sec. 842; *Goltra v. Sanasack,* 53 Ill. 456.)   In *Tilton v. Fairmount Lodge,* 244 Ill. 617, this court said (p. 622):   "Where the terms of the written instrument were used deliberately and knowingly by the parties, even though under a misapprehension of their legal effect, there can be no relief and no reformation of the contract."   It is obvious from these authorities that even if it be conceded that, as argued by counsel for appellants, they made a mistake because of the incorrect legal advice of attorney Brown, the trial court rightly dismissed the bill for want of equity.   It is proper to say, in view of the

claim as to Brown advising improperly, that if his testimony be taken as a basis of proper comment on his action, it cannot be said that he acted improperly or should be subject to criticism because appellants misconstrued what he said as to the rights of the widow in the property. It is obvious that the widow and daughters did not fully understand the use of some of the legal terms used in the discussions. It is also obvious from the record, as already stated, that there was no intention on the part of any of the parties to this division agreement fraudulently to mislead. Appellants agreed in the selection of Brown as counsel for all the parties, and they were not misled or deceived in any way by appellee or anyone representing her.

We find nothing in this record that justifies the reversal of this decree. The decree of the circuit court will be affirmed.

*Decree affirmed.*