MAX W. HARBAUGH, Plaintiff-Appellee, v. NANCY R. HAUSMAN *et al.*, Co-Ex'rs of the Estate of C.A. Rice, Deceased, Defendants-Appellants.

Fourth District   No. 4—90—0622

Opinion filed March 7, 1991.—Rehearing denied April 2, 1991.

Jeffrey W. Tock, of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellants.

Emerson L. Moore, of Lemna, Moore & Carroll, of Tuscola, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the illusive concepts involved in the rescission of a contract on the basis of a mutual mistake as to antecedent matters which include questions of law. The case began on January 27, 1989, when plaintiff Max W. Harbaugh filed a complaint in the circuit court of Douglas County against defendants Nancy R. Hausman and Christopher Hausman, coexecutors of the estate of C.A. Rice, deceased. Plaintiff sought specific performance of a contract whereby defendant's decedent agreed to sell him 330 shares of the capital stock of the Villa Grove Bank (Bank). On June 27, 1990, the court granted plaintiff's motion for summary judgment. On July 3, 1990, defendants filed a motion to reconsider. On August 14, 1990, defendants were given leave to file affirmative defenses requesting a rescission of the contract. After a hearing on defendants' motion for reconsideration, that motion was denied on August 14, 1990.

■ Defendants have appealed, contending the affirmative defenses together with depositions and exhibits on file create at least a factual question as to whether a mutual mistake as to the legal effect of a preexisting option agreement between the parties requires rescission of the contract upon which suit was brought. We recognize the reluctance of courts to rescind contracts upon the basis of mutual mistakes of law. (*Holbrook v. Tomlinson* (1922), 304 Ill. 579, 136 N.E. 745.) However, we deem some explanation of the facts of the case is appropriate before we confront the legal question upon which this case turns. Because, in order to be entitled to a summary judgment, a

movant must show undisputed facts which established the movant is entitled to judgment as a matter of law (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867), we recite those facts in the light most favorable to the defendants against whom the summary judgment was entered.

Defendants' decedent was chairman of the board of the Bank at times pertinent until December 1983. On December 20, 1976, decedent entered into a contract with Harrison J. McCown, the majority shareholder of a holding company owning a controlling interest in the Bank. That contract granted McCown (1) an option of first refusal to purchase decedent's bank shares at any time during decedent's lifetime for $8,000, and (2) an absolute option right to purchase those shares for that price for 60 days following decedent's death. On November 24, 1978, a tripartite agreement was entered into between the decedent, plaintiff, who was then president of the Bank, and McCown whereby McCown released decedent from the 1976 option agreement and decedent granted the same option terms to plaintiff. That agreement provided that "in consideration of SELLER [decedent] granting to BUYER [plaintiff] the exclusive first option, BUYER agrees to pay to SELLER $100.00 the receipt of which is hereby acknowledged by SELLER."

■ Evidence indicated a check for $100 was executed by plaintiff at the time of the foregoing 1978 transaction but was made payable to McCown, who had released decedent from the 1976 option agreement, rather than to decedent, who was to receive $100 under the terms of the 1978 agreement and who acknowledged receipt of that sum by the terms of the instrument. At the time of the 1978 agreement, McCown was representing decedent as an attorney and drafted the document but the record gives no indication that McCown received the money on behalf of the decedent or turned the money over to him. The first element of defendants' affirmative defense theory is that at least a factual question exists as to whether decedent received any consideration for his grant of options in the 1978 agreement. If decedent received no consideration, then, as to him, that agreement merely constitutes an offer of options which can be withdrawn prior to acceptance. *Hermes v. Wm. F. Meyer Co.* (1978), 65 Ill. App. 3d 745, 749, 382 N.E.2d 841, 844.

The contract upon which suit was brought was entered into between decedent and plaintiff on December 24, 1983. It recited the existence of the 1978 option agreement whereby plaintiff had an option to purchase decedent's stock for $8,000. The contract also stated: "Seller [decedent] has requested that said option agreement be con-

verted into a firm agreement providing for the sale of said 300 shares of stock from Seller to Buyer, and Buyer is willing to honor said request." The contract then stated the sale was to take effect upon the decedent's death. Thus, for the first time, plaintiff was under an obligation to buy the shares. However, evidence was also introduced that earlier in December 1983 decedent had resigned as chairman of the Bank board of directors and, after the meeting where he resigned, he had a conversation with McCown and plaintiff. Evidence indicated the decedent told them he did not want to sell his Bank stock for $8,000 and it was worth more than that.

Citing *Jones v. Dove* (1943), 382 Ill. 445, 47 N.E.2d 447, and *Kalman v. Bertacchi* (1980), 80 Ill. App. 3d 530, 400 N.E.2d 507, defendants maintain the above conversation between the decedent, McCown and plaintiff could be deemed by a trier of fact to constitute a rescission of decedent's option offer which existed if the 1978 agreement lacked consideration. The existence of a rescission of that "offer" is the second element of defendants' theory that the 1983 contract should be rescinded.

Both *Jones* and *Kalman* concern the question of whether conduct of vendees under contracts for sales of real estate constituted rescission of those contracts barring them from obtaining specific performance of those contracts. In *Jones* the vendee's conduct in leaving the premises and stating he could not make payments was held to constitute a rescission. In *Kalman* the failure of the vendee to make a substantial escrow payment required by a court-imposed settlement agreement between the parties was held not to constitute a rescission of the agreement as a matter of law. That court stated:

> "Rescission or abandonment of a contract may be deduced from circumstances or from a course of conduct which clearly evidences an abandonment thereof. (*Lasher v. Loeffler* (1901), 190 Ill. 150, 60 N.E. 85; *Jones v. Dove* (1943), 382 Ill. 445, 47 N.E.2d 447.) To constitute abandonment of a contract for the sale of land by conduct, the acts relied on must be positive, unequivocal and inconsistent with the existence of the contract. *Grossman v. Liedeker* (Tex. Civ. App. 1947), 202 S.W.2d 267." *Kalman*, 80 Ill. App. 3d at 533, 400 N.E.2d at 510.

Here, evidence indicated the decedent forcefully stated that he did not want to sell his stock for $8,000 and he did not think it was fair that he should have to do so. On the other hand, plaintiff emphasizes that the 1983 contract recites decedent requested the contract and points out that decedent benefited from the contract because, for the first time, plaintiff was required to buy decedent's shares. The mental

state of the decedent at this time was a question of fact for the trier of fact. However, if, as defendants contend, the decedent did not know the 1978 option agreement was merely an offer, a trier of fact could not find decedent positively and unequivocally withdrew that offer although much evidence indicates that he would have done so if he had believed the 1978 option agreement was actually only an offer. In any event, failure of defendants to establish that the decedent's "offer," arising from the 1978 agreement, was not withdrawn does not necessarily mean that, in entering into the 1983 agreement, plaintiff was accepting the offer of an option. The 1983 contract did not give plaintiff an option. Rather, it required plaintiff to buy the shares.

■ If the 1978 agreement was void as to the decedent for lack of consideration, some evidence indicates neither the decedent nor plaintiff thought that was so. The evidence of the conversation between decedent, McCown, and plaintiff wherein decedent stated he did not want to sell the shares for $8,000 is sufficient to justify a trier of fact to find the decedent would not have entered into the 1983 contract had he not thought the 1978 agreement was binding upon him. Plaintiff's signing of the 1983 contract which recites the existence of a first option possessed by him to buy decedent's Bank shares for $8,000 before sale could be made to anyone else is evidence of substance that plaintiff thought the 1978 option agreement was valid.

Accordingly, we reach the heart of the case. The third element of defendants' theory is that if the decedent and plaintiff were mistaken as to the legal effect of the 1978 option agreement and the decedent would not have entered into the 1983 agreement if he had known this, the 1983 contract should be rescinded.

Citing *Holbrook*, plaintiff maintains any mutual mistake of the decedent and plaintiff as to the validity of plaintiff's purported option to purchase the decedent's shares was a mistake of law which is not recognized in Illinois law as a grounds for revocation. *Holbrook* is similar to the instant case in an important way. The mistake between parties to a contract there concerned a matter antecedent to the entry into the contract sought to be set aside. There, daughters of an intestate decedent by a first marriage met with the decedent's widow and an attorney. They agreed that the widow should have one-third of his real estate in fee and the other two-thirds would be equally divided in fee between the daughters as his only heirs. Under the law in regard to succession of estate upon intestacy in force at that time, the widow was only entitled to a life estate in one-third of the decedent's realty. Contending that they entered into agreement with the widow based upon a mistaken belief that the widow's statutory share was a one-

third interest in fee, the daughters brought suit to set aside deeds made pursuant to the agreement. The supreme court affirmed a circuit court order dismissing the case for want of equity, holding no relief could be granted for a "mistake of law, pure and simple." *Holbrook*, 304 Ill. at 585, 136 N.E. at 747.

*Holbrook* has been relied upon to deny relief from instruments entered into with a mistake as to the legal significance of that instrument in *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 436 N.E.2d 663, *McCarthy v. McCarthy* (1956), 9 Ill. App. 2d 462, 133 N.E.2d 763, and *In re Estate of McIlrath* (1934), 276 Ill. App. 408. Those cases did not concern mistakes as to a matter antecedent to the agreement sought to be set aside as is the case in *Holbrook* and here.

Defendants rely upon several Illinois Supreme Court cases, the most recent of which is *Barkhausen v. Continental Illinois National Bank & Trust Co.* (1954), 3 Ill. 2d 254, 120 N.E.2d 649. There, beneficiaries of a land trust which had purchased real estate that was subject to a mortgage brought suit to obtain a declaration they were not personally liable for the indebtedness secured by the mortgage to which the property was subject. Their fear was that the action of the trustee, acting in that capacity, in assuming the covenants of the mortgagor of the mortgage had imposed liability upon the beneficiaries. The circuit court granted summary judgment for the plaintiffs. The appellate court reversed, holding that the power given the beneficiaries to manage the building subjected them to liability on the mortgage (*Barkhausen v. Continental Illinois National Bank & Trust Co.* (1953), 351 Ill. App. 388, 406-07, 115 N.E.2d 640, 648). The supreme court reversed the appellate court and affirmed the circuit court. Most of the opinion concerned a discussion of how all of the dealings between the parties in regard to the purchase of the property subject to the mortgage was conducted upon the basis that the beneficiaries would not be liable for deficiencies upon foreclosure of the mortgage.

Finally, the *Barkhausen* court addressed the beneficiaries' request to have the assumption agreement executed by the trustee modified to make clear the intent of the parties and show that no personal liability of the beneficiaries was intended. The court agreed to do so and stated that the possibility that the mutual mistake of the parties in regard to the question of beneficiaries' liability was one of law was no hindrance to ruling on this issue. We quote from the opinion at great length because this is the most recent statement of the supreme court on the issue of granting relief for mistakes which include elements of law. In addition, it gives a good review of the supreme court cases

relied upon by defendants. In this respect, the *Barkhausen* court stated in a single paragraph:

"But, appellee says that this court is powerless to remedy the mistake, if there was one, because it was a mutual mistake of law. What constitutes a mistake of law or a mistake of fact is a subject upon which many conflicting and irreconcilable discourses have been written. In Illinois there are well-reasoned opinions that hold that relief is appropriate whether one views a mistake to be one of fact or one of law. *Darst v. Lang*, 367 Ill. 119[, 123-24, 10 N.E.2d 659, 662], is one that is peculiarly applicable. In that case aging parents deeded to their beloved daughter their farm, intending to reserve unto themselves a life estate but mistakenly failing to do so. This daughter after several years, upon learning of their failure to reserve their life estate, sought to deprive her father and mother of the proceeds of the premises which they had been enjoying uninterruptedly since the execution of the deed. In that proceeding reformation was sought because of a mistake, but the daughter urged the applicability of the rules that extrinsic evidence cannot be considered and that a court of equity is powerless to remedy a mistake of law. The court in rejecting those arguments used this language which we believe appropriately applies to the situation before us: 'Relief is not barred in a proper case because the mistake is one of law. In *Peter v. Peter*, 343 Ill. 493[, 499-500, 175 N.E. 846, 849], we recently said: "The general rule that relief may not be had in equity against mistakes of law has by no means been invariably applied in this country nor in England. Where injustice would be done by its enforcement such injustice has been avoided by declaring that a mistake such as to the title to property or the existence of a certain particular right, though caused by an erroneous idea as to the legal effect of a deed, *** was really a mistake of fact and not strictly one of law and so did not constitute an insuperable bar to relief. *** The distinction between ignorance or mistake as to a general rule of law prescribing conduct and a mistake as to private rights or interests of a party to a written instrument has frequently been drawn. It has also been said that there is no established rule forbidding the giving of relief in any case to one injured by reason of a mistake of law, but that whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injury to others,

equity will afford him redress." In *Reggio v. Warren*, 207 Mass. 525, [534-35,] 93 N.E. 805[, 807], the court said, "So it has been said that the important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties." ' " (*Barkhausen*, 3 Ill. 2d at 269-70, 120 N.E.2d at 657-65.) The court then explained that in that case requiring the beneficiaries to be liable on the mortgage debt which encumbered the property would be grossly unfair.

■ In making our decision we must consider that leading texts on the law of contracts (Restatement (Second) of Contracts §151, comment b, at 384 (1981); 3 A. Corbin, Contracts §616 (1960); 13 S. Williston, Contracts §1581 (3d ed. 1970)) all set forth that great inroads have been made upon any rule that a contract cannot be rescinded for a mutual mistake merely because the mistake is one of law. Even in *Holbrook* the refusal to grant relief for a mutual mistake of law was limited to a mistake of law which was that "pure and simple." (*Holbrook*, 304 Ill. at 585, 136 N.E. at 747, citing 2 J. Pomeroy, Equity Jurisprudence §842 (3d ed.).) Other sections of Pomeroy's Equity Jurisprudence indicate what is meant by the phrase "pure and simple." A mistake of that nature arises when a person enters into a contract not fully understanding the legal ramifications of the contract. (3 J. Pomeroy, Equity Jurisprudence §841 (5th ed. 1941).) However, where a person is mistaken "as to his own antecedent existing legal rights," relief may be granted in regard to a subsequent contract he enters into in reliance on his mistaken belief as to antecedent rights. (3 J. Pomeroy, Equity Jurisprudence §849, at 308 (5th ed. 1941).) Moreover, the concept by which a mistake is one of law "pure and simple" is more likely to arise when the mistake is as to a general rule of law than when the mistake is as to an individual's rights arising from a particular antecedent transaction. 3 J. Pomeroy, Equity Jurisprudence §849 (5th ed. 1941).

Here, as in *Holbrook*, the alleged mistake concerns an antecedent matter. There, the antecedent matter was the rights of a widow to an intestate estate. Here, the alleged mistake was as to the validity of the 1978 option. However, in *Holbrook* the antecedent question was entirely encompassed in the widow's statutory intestate rights. Here, the mistake concerned the legal ramifications of a prior transaction.

The mistake here could be a lack of knowledge of the necessity for consideration to support a contract or the mistake could be a lack of knowledge as to what happened to the proceeds of the $100 check. Thus, here the alleged mistake is more closely related to a prior particular transaction than that in *Holbrook* and more mixed with aspects of fact. Even under the "pure and simple" question of law criterion of *Holbrook*, the alleged mistake here appears to be of a nature which would permit it to be the basis of a suit for rescission.

■ When we also take into consideration the precedent of *Barkhausen* and the trend indicated in the texts we have cited, we conclude defendants have alleged a valid affirmative defense to plaintiff's suit for specific performance. The matters properly before the court in regard to plaintiff's motion for summary judgment do not show that plaintiff was entitled to judgment as a matter of law. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

■ We end with a cautionary note. The *Barkhausen* court indicated that the fairness of a transaction sought to be rescinded for mutual mistake bearing on a question of law is an important matter for consideration in such a suit. Fairness is also a consideration when rescission is sought for mutual mistake of fact independent of a legal question. (*John Burns Construction Co. v. Interlake, Inc.* (1982), 105 Ill. App. 3d 19, 433 N.E.2d 1126; *Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 536 N.E.2d 194.) Defendants maintain that permitting plaintiff's specific performance of the instant contract would work a grave injustice on them because when the 1983 contract was entered into and at the time of hearing, the value of the Bank stock was much higher than the $8,000 price determined by the option contract. The likelihood of this happening is inherent in every situation where one party grants another an option to purchase property in the future at a stated price.

For the reasons stated, we reverse the summary judgment entered for plaintiff and remand the cause to the circuit court of Douglas County for further proceedings.

Reversed and remanded.

LUND, P.J., and STEIGMANN, J., concur.